IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 20-0377
_____

FILED
**June 11, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE:  Z.H.

_____

Appeal from the Circuit Court of Mercer County
Honorable Mark E. Wills, Judge
Juvenile Action No. 18-JA-121

VACATED AND REMANDED WITH DIRECTIONS
_____

Submitted: March 24, 2021
Filed:  June 11, 2021

John G. Byrd, Esq.
Mercer County Public
  Defender Corp.
Princeton, West Virginia
Counsel for Petitioner Mother

Patrick Morrisey, Esq.
Attorney General
S. L. Evans, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent W.Va.
  Dept. of Health and Human
  Resources

Andrea P. Powell, Esq.
Princeton, West Virginia
Guardian ad Litem

JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICE WALKER dissents and reserves the right to file a separate opinion.

**SYLLABUS OF THE COURT**

1. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

2. "The Uniform Child Custody Jurisdiction and Enforcement Act, West Virginia Code § 48-20-101, *et seq.*, is a jurisdictional statute, and the requirements of the statute must be met for a court to have the power to adjudicate child custody disputes." Syl. Pt. 6, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008).

3. "Subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, West Virginia Code § 48-20-101, *et seq.*, cannot be conferred by consent, waiver, or estoppel." Syl. Pt. 5, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008).

4. "'Lack of jurisdiction may be raised for the first time in this court, when it appears on the face of the bill and proceedings, and it may be taken notice of by this court on its own motion.' Syllabus Point 3, *Charleston Apartments Corp. v. Appalachian Elec. Power Co.*, 118 W. Va. 694, 192 S.E. 294 (1937)." Syl. Pt. 3, *Lewis v. Munic. of Masontown*, 241 W. Va. 166, 820 S.E.2d 612 (2018).

5. All courts must be watchful for jurisdictional issues arising under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), West Virginia Code §§48-20-101 to -404 (2001). Even if not raised by a party, if there is any question regarding a lack of subject matter jurisdiction under the UCCJEA then the court should sua sponte address the issue as early in the proceeding as possible.

6. "To determine whether a state qualifies as a child's 'home state' for purposes of determining initial jurisdiction under W. Va. Code § 48-20-201(a) (Repl. Vol. 2009), a court must analyze whether any state qualified as the child's 'home state' at any time within the six months immediately preceding commencement of the action." Syl. Pt. 3, *In re K.R.*, 229 W. Va. 733, 735 S.E.2d 882 (2012).

7. When determining whether a court has home state subject matter jurisdiction over the custody of a child who is less than six months old, West Virginia Code §§ 48-20-102(g) (2001) and 48-20-201(a)(1) (2001) direct the court to consider where the child lived from the child's birth to the commencement of the proceeding in which custody is at issue. Events prior to birth, and the child's living arrangements after the commencement of the proceeding, are not relevant to the determination of whether the court has home state subject matter jurisdiction.

8. A newborn child's hospital stay incident to birth is insufficient to confer home state subject matter jurisdiction pursuant to West Virginia Code §§ 48-20-102(g) (2001) and 48-20-201(a)(1) (2001).

9. One of the requirements under West Virginia Code § 48-20-201(a)(3) (2001) for a court to obtain subject matter jurisdiction over an initial child custody determination where another state has either home state jurisdiction or significant connection jurisdiction, is that a court of the other state must decline to exercise jurisdiction. This requirement is not satisfied by evidence that some other person or entity in the other state has declined jurisdiction.

10. "A decree entered in a pending suit in which the court lacks jurisdiction of the subject-matter is to that extent void[.]" Syl. Pt. 5, in part, *State ex rel. Hammond v. Worrell*, 144 W. Va. 83, 106 S.E.2d 521 (1958), *overruled on other grounds by Patterson v. Patterson*, 167 W. Va. 1, 277 S.E.2d 709 (1981).

**HUTCHISON, Justice:**

The petitioner mother, C.S., appeals the Circuit Court of Mercer County's March 5, 2020, order terminating all her rights to her infant son, Z.H., in an abuse and neglect proceeding. The petitioner contends that the circuit court lacked subject matter jurisdiction over this case pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"),[1] and even if there was jurisdiction, the court erred by not imposing a disposition less than termination of all of her rights. The respondents herein, the West Virginia Department of Health and Human Resources ("DHHR") and the child's guardian ad litem ("GAL"), contend that there was no error.

Having considered the parties' arguments, the appendix record on appeal, and the pertinent authorities, we conclude that the circuit court lacked subject matter jurisdiction under the provisions of the UCCJEA. The State of Virginia has subject matter jurisdiction over the custody of this child, and there is no evidence that a Virginia court ever declined to exercise that jurisdiction. We therefore vacate the circuit court's final order and remand this case with directions for the circuit court to contact a Virginia court to inquire about the declination of jurisdiction and to take further actions in accordance with this opinion.

---

[1] The UCCJEA, which is codified in chapter 48, article 20 of the West Virginia Code, is discussed in detail in the discussion section of this opinion, *infra*.

1

## I. Facts and Procedural Background

Z.H. was born on May 8, 2018, at the Bluefield Regional Medical Center in Bluefield, Mercer County, West Virginia. Because the petitioner mother used narcotics while pregnant, Z.H. was born drug exposed and required in-patient medical care. The putative father is the petitioner's boyfriend, L.H. On May 9, the petitioner cut off the hospital's infant security bracelet and attempted to remove Z.H. from the hospital but was stopped by hospital staff. That same day, the DHHR assumed emergency legal custody of the child.[2] These events were reported to the Circuit Court of Mercer County, West Virginia, which immediately held an emergency hearing and found probable cause to believe the child was in imminent danger of being deprived of medical care. That same day, May 9, the court entered an order ratifying the temporary emergency custody, appointing counsel, and setting a preliminary hearing date and time.

---

[2] West Virginia Code § 49-4-303 (2015) authorizes a DHHR child protective services ("CPS") worker to take a child into his or her emergency custody prior to the filing of an abuse and neglect petition if the child is in an emergency situation that constitutes an imminent danger and the worker has probable cause to believe that the child will suffer additional abuse or neglect or will be removed from the county before an abuse and neglect petition can be filed. When an "emergency removal" of a child occurs pursuant to this statute, the worker must "forthwith appear" before a court or referee to obtain an order ratifying the emergency removal "pending the filing of a petition" for abuse and neglect. *Id*. The statute further provides that the child will be returned to the parent's custody unless the DHHR files a petition for abuse and neglect [*see* West Virginia Code § 49-4-601 (2019)] within two judicial days and custody is transferred to the DHHR pursuant to West Virginia Code § 49-4-602 (2015).

On May 10, the DHHR filed an abuse and neglect petition[3] with the circuit court alleging that Z.H. was abused and/or neglected because of the petitioner's drug use during pregnancy and because of medical neglect based upon the attempt to remove the newborn from the hospital during treatment. In the petition, the DHHR stated that the petitioner and L.H. are residents of Tazewell County, Virginia; nonetheless, the petition asserted that the circuit court had jurisdiction over this matter "because [West Virginia] is the home state of the child at the time of the commencement of this proceeding."

The abuse and neglect petition also reported that the petitioner and L.H. were the respondents in a prior child abuse and neglect case in Giles County, Virginia, in which their rights to another child were involuntarily terminated. The petition was subsequently amended to provide additional information about the Virginia case, including that the involuntary termination of parental rights to the other child was based upon the parents' drug use and had been finalized just two months before Z.H. was born. The circuit court held a preliminary hearing on May 23, affirmed its prior finding of imminent danger, scheduled a meeting of the multi-disciplinary treatment ("MDT") team, and scheduled the case for an adjudicatory hearing.

---

[3] *See* W. Va. Code § 49-4-601 (specifying procedures for abuse and neglect petition).

When the DHHR was granted emergency legal custody of Z.H., the petitioner and L.H. returned home to Bluefield, Tazewell County, Virginia.[4] The child remained in the hospital for several more weeks. Upon discharge from the hospital, Z.H. was placed with foster parents in West Virginia. The child has continuously resided with foster parents throughout this abuse and neglect proceeding.

The circuit court held an adjudicatory hearing in August of 2018, where the petitioner and L.H. were adjudicated as abusing parents.[5] The petitioner received both a post-adjudicatory improvement period and a post-dispositional improvement period. During dispositional hearings in July 2019 and January 2020, the DHHR presented evidence that the petitioner had failed to cooperate with drug screens and treatment; did not consistently participate in services, even when providers went to her home; never provided proof of a prescription for the Suboxone that she was taking; never obtained regular employment; did not obtain a required psychological evaluation; did not consistently visit with Z.H.; missed hearings and MDT meetings; and continued to have contact with L.H., whose rights had already been terminated. The DHHR also asserted that the petitioner refused to acknowledge the conditions of abuse and neglect. The petitioner testified and denied most of the DHHR's assertions. She stated that she did not drug test in

---

[4] Bluefield, West Virginia, and Bluefield, Virginia, are adjacent towns that lie within different states.

[5] The circuit court later terminated all rights of the putative father, L.H., and of any unknown/unnamed father. L.H. did not appeal.

4

this proceeding because she was unable to produce a urine sample while being observed; she was obtaining weekly drug treatment at a Suboxone clinic in the State of Tennessee; she earned money through various internet sites and applications; she missed hearings and MDT meetings for this case because the DHHR failed to renew her bus pass; and the service providers who were hired to drive her to visits with the child had stopped showing up. The petitioner never produced any records or other corroborating evidence that she was being treated at a Suboxone clinic in Tennessee, and she never produced any records of any drug screens given at a clinic. She asserted that she removed the hospital security bracelet from the newborn Z.H. because she was unhappy with the medical care being rendered and desired to go to a different hospital, but she had not made any arrangements with another hospital or other medical provider to render care to the drug exposed infant.

There is no indication in the appellate appendix record that any party raised with the circuit court the issue of whether the court had subject matter jurisdiction over this case. Nonetheless, evidence relevant to this issue was presented. A DHHR child protective services ("CPS") worker testified during the adjudicatory hearing that the petitioner resided in a particular apartment complex in the State of Virginia.[6] The CPS worker also testified that she did not know of any connections that the petitioner had with West Virginia other than being at Bluefield Regional Hospital to give birth. Similarly, the petitioner testified during the adjudicatory hearing that she lived in Bluefield, Virginia; neither she nor the

---

[6] It was undisputed that the putative father, L.H., also resided in Virginia.

child had ever lived in West Virginia; and she had no connections with West Virginia other than going to the hospital in Bluefield, West Virginia. The petitioner also testified about taking a bus from her home in Virginia to attend some of the West Virginia court hearings. Furthermore, during the adjudicatory hearing, the CPS worker was asked whether "any other jurisdiction respond[ed] to exercise jurisdiction over the matter?" She answered, "to my knowledge, no." However, there is no indication in the record that a court in Virginia was ever contacted regarding the exercise of jurisdiction.

Ultimately, the circuit court determined that the petitioner failed to comply with her improvement periods, many of the services offered to her, and her visitation opportunities. The court found that the petitioner was "manipulative" and gave "an excuse for everything[.]" Upon concluding that termination of the petitioner's parental, custodial, and guardianship rights was necessary for the welfare of the child, the court terminated these rights by order entered with the circuit clerk on March 5, 2020.[7] The petitioner is now appealing that order to this Court.

## II. Standard of Review

The dispositive issue in this appeal is the question of subject matter jurisdiction under the UCCJEA. "[J]urisdictional issues are questions of law[.]" *State ex*

---

[7] *See* W. Va. Code § 49-4-604(c)(6) (2020) (specifying circumstances for termination of parental rights).

*rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 343, 801 S.E.2d 216, 221 (2017) (citation omitted). "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995); *accord* Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996) (recognizing that in appeals of abuse and neglect orders, questions of law are subject to de novo review). With this plenary standard in mind, we consider the parties' arguments.

## III. Discussion

In her first assignment of error, the petitioner contends that the circuit court erred by failing to order a disposition less restrictive than the full termination of her rights. She suggests that the circuit court could have terminated only her guardianship and custodial rights, while leaving her parental rights in place. In her second assignment of error, the petitioner argues that the circuit court lacked subject matter jurisdiction over this case pursuant to the provisions of the UCCJEA, West Virginia Code §§ 48-20-101 to -404 (2001). She concedes that to protect the child from immediate harm, the circuit court had temporary jurisdiction pursuant to a provision in the UCCJEA to allow the DHHR to assume emergency custody. *See* W. Va. Code § 48-20-204(a) (2001).[8] However, she argues

---

[8] West Virginia Code § 48-20-204, titled "Temporary emergency jurisdiction," provides:

> (a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has

7

been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

(b) If there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under sections 20-201 through 20-203, inclusive, of this article, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under sections 20-201 through 20-203, inclusive, of this article. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under sections 20-201 through 20-203, inclusive, of this article, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

(c) If there is a previous child custody determination that is entitled to be enforced under this chapter, or a child custody proceeding has been commenced in a court of a state having jurisdiction under sections 20-201 through 20-203, inclusive, of this article, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under sections 20-201 through 20-203, inclusive, of this article. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

(d) A court of this state which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under sections 20-201 through 20-203, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to sections 20-201 through 20-203, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the

that the circuit court lacked jurisdiction to proceed beyond the temporary, emergency stage. Because the UCCJEA issue is dispositive of the instant appeal, we focus our discussion there.

The UCCJEA is a model law adopted in West Virginia that governs subject matter jurisdictional issues for all child custody proceedings, including abuse and neglect proceedings. *See e.g.*, W. Va. Code § 48-20-102(d) (2001) (defining "child custody proceeding" under UCCJEA to include "a proceeding for . . . neglect, abuse"); *In re J.C.*, 242 W. Va. 165, 170, 832 S.E.2d 91, 96 (2019) ("We note at the outset that, for purposes of the UCCJEA, an abuse and neglect proceeding comes under the definition of a 'child custody proceeding.'") (footnote and citation omitted).

There is no indication in the appellate appendix record that the petitioner challenged the circuit court's jurisdiction while this case was pending in circuit court. Rather, it appears that this issue is being raised for the first time on appeal. We are deeply troubled by the petitioner's delay in asserting the jurisdictional challenge, and by the failure of the circuit court, the DHHR,[9] and the GAL to recognize and timely address the obvious

---

emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

[9] Although represented by the Attorney General on appeal, the DHHR was represented by the Office of the Mercer County Prosecuting Attorney at the circuit court level.

jurisdictional concern in this case.[10] The price of this delay will unfortunately fall squarely upon Z.H., a child who must now wait longer for the permanency he deserves.

Nonetheless, even if the UCCJEA issue was not raised or addressed below, "[t]he Uniform Child Custody Jurisdiction and Enforcement Act, West Virginia Code § 48-20-101, *et seq.*, is a jurisdictional statute, and the requirements of the statute must be met for a court to have the power to adjudicate child custody disputes." Syl. Pt. 6, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008); *accord Ellithorp v. Ellithorp*, 212 W. Va. 484, 490, 575 S.E.2d 94, 100 (2002) ("[j]urisdiction of the person may be conferred by consent, . . . [but] jurisdiction of the subject-matter of litigation must exist as a matter of law") (citations and internal quotation marks omitted)). "Subject matter jurisdiction under the" UCCJEA "cannot be conferred by consent, waiver, or estoppel." *Rosen*, 222 W. Va. at 404, 664 S.E.2d at 745, syl. pt. 5. Furthermore, a "'[l]ack of jurisdiction may be raised for the first time in this court, when it appears on the face of the bill and proceedings, and it may be taken notice of by this court on its own motion.' Syllabus Point 3, *Charleston Apartments Corp. v. Appalachian Elec. Power Co.*, 118 W. Va. 694, 192 S.E. 294 (1937)." Syl. Pt. 3, *Lewis v. Munic. of Masontown*, 241 W. Va. 166, 820 S.E.2d 612 (2018).

---

[10] For example, the fact that the petitioner was traveling from another state to attend the hearings in this case should have raised a red flag to the court and to counsel that they should consider any UCCJEA implications. Another obvious clue was the testimony of both the CPS worker and the petitioner stating that the petitioner had no contact with West Virginia other than going to the hospital to give birth.

Although we will address the application of the UCCJEA in this appeal, we emphasize that the issue should have been taken up at the beginning of the circuit court proceeding. "The urgency of addressing problems regarding subject-matter jurisdiction cannot be understated because any decree made by a court lacking jurisdiction is void." *State ex rel. TermNet Merch. Servs., Inc. v. Jordan*, 217 W. Va. 696, 700, 619 S.E.2d 209, 213 (2005) (citation omitted). Because of the vital importance of this issue to children, we hold that all courts must be watchful for jurisdictional issues arising under the Uniform Child Custody Jurisdiction and Enforcement Act, West Virginia Code §§ 48-20-101 to -404 (2001). Even if not raised by a party, if there is any question regarding a lack of subject matter jurisdiction under the UCCJEA then the court should sua sponte address the issue as early in the proceeding as possible. *See*, *e.g.*, Syl. Pt. 2, *In re Boggs' Estate*, 135 W. Va. 288, 63 S.E.2d 497 (1951) (recognizing that court may take notice of lack of subject matter jurisdiction at any time in litigation).

Turning to the substance of the petitioner's argument, the different bases for a court to have subject matter jurisdiction under the UCCJEA are set forth in W. Va. Code § 48-20-201(a) (2001).[11] Those bases have been summarized as follows:

---

[11] West Virginia Code § 48-20-201 provides:

> (a) Except as otherwise provided in section 20-204, a court of this state has jurisdiction to make an initial child custody determination only if:
> (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state

"to exercise jurisdiction to determine child custody, a court of this state must satisfy one of the four bases of jurisdiction set forth in Section 201(a). These four bases have been aptly summarized as 1) "home state" jurisdiction; 2) "significant connection" jurisdiction; 3) "jurisdiction because of declination of jurisdiction"; and 4) "default" jurisdiction. These jurisdictional bases do not operate alternatively to each other, but rather, in order of priority—reaching the next basis of jurisdiction only if the preceding basis does not resolve the jurisdictional issue." *In re K.R.*, 229 W. Va. [733] at 740, 735 S.E.2d [882] at 889 [2012] (internal citation omitted).

---

of the child within six months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) A court of another state does not have jurisdiction under subdivision (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 20-207 or 20-208, and:

(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;

(3) All courts having jurisdiction under subdivision (1) or (2) of this subdivision have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 20-207 or 20-208; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2) or (3) of this subsection.

(b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

*J.C.*, 242 W.Va. at 171, 832 S.E.2d at 97. We will examine each of these statutory bases, in the order they are listed in the statute.

## A. Home state jurisdiction:

West Virginia Code § 48-20-201(a)(1) confers home state jurisdiction upon a West Virginia court if West Virginia "is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]" Syllabus point 3 of *Rosen* quotes the statutory definition of "home state" verbatim:

> Pursuant to West Virginia Code § 48-20-102(g) (2001), "home state" means the state in which the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. *In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned.* A period of temporary absence of any of the mentioned persons is part of the period.

*Rosen*, 222 W. Va. at 404, 664 S.E.2d at 745, syl. pt. 3 (quoting W. Va. Code § 48-20-102(g)) (emphasis added). The term "commencement" means "the filing of the first pleading in a proceeding." W. Va. Code § 48-20-102(e).

The first pleading in this proceeding was filed just one day after Z.H. was born, when the DHHR reported to the circuit court that it had assumed custody of Z.H. on an emergent basis and the circuit court entered an order that same day ratifying the

13

emergency removal. The petition for abuse and/or neglect was filed the very next day—weeks before the infant was discharged from the hospital. The petitioner argues that Z.H. did not live in the hospital, and the parents are residents of Virginia, have never lived in West Virginia, had no intent to remain in West Virginia, and had no connection with West Virginia other than going to the hospital. The petitioner argues that Z.H. did not live with any person except in the petitioner's womb, which occurred in Virginia, thus the baby's home state is Virginia. Moreover, the petitioner argues that most of the alleged abuse and neglect occurred in Virginia, where the child was exposed to drugs *in utero*. Thus, she argues that Virginia, not West Virginia, is the home state. While we agree that West Virginia is not Z.H.'s home state for purposes of the UCCJEA, the petitioner's analysis of home state jurisdiction is not entirely correct.

Because Z.H. was a newborn when this case commenced, we look to the following sentence in the statute: "In the case of a child less than six months of age, the term [home state] means the state in which the child lived from birth with any of the persons mentioned[,]" i.e., with "a parent or person acting as a parent." W. Va. Code § 48-20-102(g). Although the petitioner focuses much of her argument on the time frame *before* birth, the correct analysis for purposes of home state jurisdiction examines the time "from birth." *See id.* We discussed this concept in *J.C.*:

> Relevant to the issue in this case is the observation in *Rosen* that, if a child custody proceeding commences when a child is less than six months old, W. Va. Code § 48-20-102(g) defines home state as the state in which the child lived from birth. *See A.M. v. Houston Cty. Dep't of Human Res.*, 262 So.

14

3d 1210, 1217 (Ala. Civ. App. 2017) ("Because the child was less than six months old on the date of the commencement of the dependency proceeding, the child's 'home state' is defined as 'the state in which the child lived from birth' with a parent or a person acting as a parent."); *In Interest of Arnold*, 532 S.W.3d 712, 717 (Mo. Ct. App. 2017) ("Because Baby Girl Arnold was less than six months of age when the original petition was filed in this case, her home state was the state in which she lived from birth with a parent or a person acting as a parent."); *Jamilah DD. v. Edwin EE.*, 152 A.D.3d 998, 59 N.Y.S.3d 193, 194 (2017) ("Where, as here, the child is less than six months old, the home state is 'the state in which the child lived from birth' with a parent or a person acting as a parent."); *Ocegueda v. Perreira*, 232 Cal. App. 4th 1079, 1085, 181 Cal. Rptr. 3d 845, 849 (2015) ("Thus, according to the plain language of the statute, the period for determining the home state of a child who is less than six months of age starts with the child's birth.").

*J.C.*, 242 W. Va. at 171-72, 832 S.E.2d at 97-98. Accordingly, we do not look at the circumstances before Z.H.'s birth to determine home state jurisdiction.[12]

The DHHR also misconstrues home state jurisdiction. The DHHR notes that since being released from the hospital, Z.H. has continuously resided with foster parents in West Virginia. The DHHR argues that the foster parents are the "person[s] acting as a parent" for purposes of establishing home state jurisdiction. *See* W. Va. Code § 48-20-102(g). This argument ignores the fact that Z.H. was only placed with the foster parents *after*, and *as the result of*, the commencement of the abuse and neglect proceeding. As set

---

[12] As discussed below, West Virginia Code § 48-20-201(a) does not limit the establishment of other bases for jurisdiction to an examination of the time frame "lived from birth." This language is in the statutory provision defining "home state" with respect to children less than six months of age. *See* W. Va. Code § 48-20-102(g).

forth above, "commencement" means "the filing of the first pleading in a proceeding." W. Va. Code § 48-20-102(e). This proceeding commenced one day after Z.H.'s birth, before the child was placed with the foster parents.

Multiple plain and unambiguous provisions of the UCCJEA, as well as our own case law, make clear that the time frame *after* the commencement of the child custody proceeding is not relevant to the determination of home state jurisdiction. This includes West Virginia Code § 48-20-201(a)(1), which provides that "[t]his state is the home state of the child *on the date of the commencement of the proceeding*, or was the home state of the child within six months *before the commencement of the proceeding*[.]" (emphasis added). Similarly, West Virginia Code § 48-20-102(g) refers to the child living with a parent or a person acting as a parent "immediately *before the commencement of a child custody proceeding.*" (emphasis added). Indeed, the very definition of "person acting as a parent" requires, inter alia, that a person have physical custody of a child "immediately *before the commencement of a child custody proceeding*[.]" W. Va. Code § 48-20-102(m), in part (emphasis added). The DHHR's argument also ignores one of our syllabus points in *K.R.*:

> To determine whether a state qualifies as a child's "home state" for purposes of determining initial jurisdiction under W. Va. Code § 48-20-201(a) (Repl. Vol. 2009), a court must analyze whether any state qualified as the child's "home state" at any time *within the six months immediately preceding commencement of the action*.

229 W. Va. at 734, 735 S.E.2d at 883, syl. pt. 3. (emphasis added). As explained in *K.R.*,

16

> [t]he Court is cognizant of the substantial amount of time that has lapsed during the pendency of this appeal. However, W. Va. Code §§ 48-20-102(g) and 201(a)(1) does [sic] not permit consideration of where the children lived subsequent to commencement of the proceeding. Therefore, the location of the children at all times subsequent to the commencement of this particular action is obviously irrelevant for purposes of determining whether the circuit court had jurisdiction in the first instance to make the permanent guardianship determination at issue.

229 W. Va. at 744 n.22, 735 S.E.2d at 893 n.22.

Although these UCCJEA concepts have previously been discussed by this Court, the arguments made in the case *sub judice* suggest that there is still confusion with regard to home state jurisdiction for a newborn child. Accordingly, to clear up any misunderstanding, we now hold that when determining whether a court has home state subject matter jurisdiction over the custody of a child who is less than six months old, West Virginia Code §§ 48-20-102(g) (2001) and 48-20-201(a)(1) (2001) direct the court to consider where the child lived from the child's birth to the commencement of the proceeding in which custody is at issue. Events prior to birth, and the child's living arrangements after the commencement of the proceeding, are not relevant to the determination of whether the court has home state subject matter jurisdiction.

Thus, in this case, the home state jurisdiction analysis is limited to an examination of the time between Z.H.'s birth and the DHHR's commencement of this proceeding in court. The DHHR sought an order to ratify its assumption of emergency

17

custody just one day after Z.H.'s birth. During this one day, Z.H. was admitted to a hospital in West Virginia. A hospital stay of this nature is obviously a temporary situation. Moreover, a hospital is not a location where a child "lives with a parent or a person acting as a parent." It cannot be said that Z.H. "lived" in the Bluefield Regional Medical Center during that one day.

Courts in other states have similarly recognized that the time spent in a hospital incident to a child's birth does not constitute "living with a parent or a person acting as a parent" for purposes of conferring home state jurisdiction under the UCCJEA. In *In re D.*S., 840 N.E.2d 1216 (Ill. 2005), a pregnant woman living in Illinois went into labor and, in an effort to evade Illinois Child and Family Services, she started driving toward Tennessee. Along the way, she stopped at a hospital in Indiana to give birth. *Id.* at 1218. While the newborn was still hospitalized, proceedings were initiated to take custody from the mother. *Id.* The issue arose as to which state had jurisdiction. Ultimately, the Supreme Court of Illinois concluded that "[b]y itself, a temporary hospital stay incident to delivery is simply insufficient to confer 'home state' jurisdiction under the UCCJEA." *Id.* at 1222. The Illinois Court reasoned that "[w]hen people speak of where a mother and newborn baby 'live,' they do not speak of the maternity ward. Instead, they speak of the place to which the mother and baby return following discharge from the hospital." *Id.* Moreover, "allowing a temporary hospital stay to confer 'home state' jurisdiction would undermine the public policy goals of the UCCJEA, which include ensuring that 'a custody

18

decree is rendered in that state *which can best decide the case* in the interest of the child.'

(Emphasis added.) 9 U.L.A. § 101, Comment, at 657 (1999)." *Id.* at 1223.

The Supreme Court of Vermont has also addressed the issue of a newborn child's home state, explaining as follows:

> [T]o determine M.S.'s home state, we look to where he was physically present since birth. He was born in New Hampshire and remained in the hospital at the time the petition was filed, but these facts alone do not make New Hampshire M.S.'s home state. Although, as explained above, "lived" as used in the statute connotes physical presence, the statutory language defines home state as more than just the place the child was present. The statutory language is plain: the home state for a child under six months is the place the child "lived from birth" with a parent or person acting as a parent. 15 V.S.A. § 1061(7). We conclude that by adding the requirement that the child live with a parent or person acting as a parent, the Legislature meant "lived" to mean more than simply being alive in the state. "When people speak of where a mother and newborn baby 'live,' they do not speak of the maternity ward," but of the place where the child and parents occupied a home. *In re D.S.*, 217 Ill.2d 306, 298 Ill.Dec. 781, 840 N.E.2d 1216, 1222 (2005). We agree with courts from other jurisdictions that a short hospital stay incident to birth does not amount to "liv[ing] from birth with" a parent and does not in itself confer home state jurisdiction. *See, e.g.*, *In re R.L.*, 4 Cal.App.5th 125, 208 Cal.Rptr.3d 523, 533–34 (2016) (holding that under UCCJEA "a temporary hospital stay in a state incident to birth, by itself, is insufficient to confer home state jurisdiction"); *In re D.S.*, 298 Ill. Dec. 781, 840 N.E.2d at 1222 ("By itself, a temporary hospital stay incident to delivery is simply insufficient to confer 'home state' jurisdiction under the UCCJEA."); *In re Adoption of Baby Girl B.*, 19 Kan.App.2d 283, 867 P.2d 1074, 1079 (1994) (explaining that statutory home state "requirement that the child 'live with' the mother from birth requires more than the mother and newborn child staying at the same hospital for a brief period"), superseded by statute, K.S.A. 59–2127, as recognized in *In re Adoption of H.C.H.*, 297 Kan. 819, 304 P.3d

19

> 1271, 1280 (2013). Here, the petition was filed the day of M.S.'s birth, and we conclude that the short period of time that M.S. was in the hospital in New Hampshire following his birth did not confer home state jurisdiction.

*In re M.S.*, 176 A.3d 1124, 1131-32 (Vt. 2017); *accord H.T. v. Cleburne Dept. of Human Resources*, 163 So.3d 1054, 1065 (Ala. Civ. App. 2014) ("We agree . . . that the drafters of the UCCJEA intended 'lived from birth' to mean where a child, with a parent or a person acting as a parent, has a presence—beyond simply a hospital stay attendant to giving birth in a state—such as residing within or occupying a home together."); *State ex rel. In re R.P. v. Rosen*, 966 S.W.2d 292, 300 (Mo. Ct. App. 1998) (applying prior version of model law, concluding that Kansas was not home state of newborn child "simply because R.P. and her mother stayed in a hospital there for two days after R.P.'s birth").

Consistent with the opinions of these other states, we now hold that a newborn child's hospital stay incident to birth is insufficient to confer home state subject matter jurisdiction pursuant to West Virginia Code §§ 48-20-102(g) (2001) and 48-20-201(a)(1) (2001). Applying the principles of law set forth herein, it is clear that West Virginia does not have home state jurisdiction over Z.H.

We also conclude that neither Virginia nor any other state has home state jurisdiction over Z.H. As a newborn infant who never left the West Virginia hospital before this proceeding was commenced, Z.H. was never physically present in another state. "We think it significant that the Legislature chose the word 'lived' as opposed to 'resided' or

20

'was domiciled.'" *K.R.*, 229 W. Va. at 742 n.20, 735 S.E.2d at 891 n.20 (quoting *Powell v. Stover*, 165 S.W.3d 322, 326 (Tex. 2005)). Courts have recognized that "it is the child's presence—not a parent or child's residence, domicile or subjective intent—that is relevant to determining a child's home state." *M.S.*, 176 A.3d at 1130; *accord*, *Sajjad v. Cheema*, 51 A.3d 146, 154 (N.J. Super. Ct. App. Div. 2012) ("determination of the child's legal residence or domicile is unnecessary as the statutory language 'lived,' included within the definition of home state, connotes physical presence within the state, rather than subjective intent to remain"); *In re Tieri*, 283 S.W.3d 889, 893 (Tex. App. 2008) ("In determining where a child lived for the purposes of establishing home state jurisdiction, the trial court must consider the child's physical presence in a state and decline to determine where a child lived based on the child's or the parent's intent."). When a newborn is at issue, it is very possible that there is no "home state" in which the child has "lived from birth." In both *In re M.S.*, 176 A.3d at 1132, and *In re D.S.*, 840 N.E.2d at 1223, the respective state supreme courts concluded that the newborn children who were the subject of those cases had no home state for UCCJEA purposes.

Next, we address an argument that the GAL makes about the UCCJEA in her summary response. Instead of discussing the various bases for jurisdiction that are set forth in West Virginia Code § 48-20-201(a),[13] the GAL relies on the temporary emergency

---

[13] *See supra* n. 11 (quoting W. Va. Code § 48-20-201).

21

jurisdiction statute, West Virginia Code § 48-20-204.[14] In particular, § 48-20-204(b) provides, in relevant part:

> If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under sections 20-201 through 20-203, inclusive, of this article, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

The GAL argues that because a child custody proceeding pertaining to Z.H. was not commenced in another state, then the circuit court's emergency order awarding temporary custody to the DHHR at the beginning of this proceeding became a final determination and West Virginia became the child's home state. However, there are multiple reasons why the GAL's argument lacks merit. First, subsection (b) of the temporary emergency jurisdiction statute only permits a child custody determination to become a final determination if the order "so provides[.]" *See id.* The circuit court's emergency removal order in this case did *not* provide that it was a final determination. Second, an emergency, pre-petition removal order entered pursuant to West Virginia Code § 49-4-303 is merely an initial step; it is never a final order.[15] The order merely "ratif[ies] the emergency custody of the child pending the filing of a[n abuse and neglect] petition." *Id.* If the DHHR removes a child from a parent's custody on an emergency, pre-petition basis, then the statute requires that an abuse and neglect petition must be filed within two judicial days or the children must

---

[14] *See supra* n. 8 (quoting W. Va. Code § 48-20-204).

[15] *See supra* n. 2 (discussing W. Va. Code § 49-4-303, the pre-petition emergency removal statute).

22

be returned to the parent's custody. *See id.* "Under the facts of the instant case, the circuit court's temporary emergency jurisdiction ended when DHHR filed the abuse and neglect petition." *J.C.*, 242 W. Va. at 174 n.28, 832 S.E.2d at 100 n.28 (citations omitted) (rejecting an argument similar to that advanced by this GAL, and noting that "the power of a court under [the temporary emergency jurisdiction statute] is limited"). Third, if another state had jurisdiction over Z.H. pursuant to the UCCJEA, then the circuit court should have inquired of a court in that other state to determine whether it was declining to exercise its jurisdiction. *See* W. Va. Code §§ 48-20-201(a)(2) and (a)(3) (discussed *infra*). As no inquiry was made of a court in another state, it is unclear how officials in the other state would have known of the need to exercise jurisdiction in this matter. Accordingly, while the circuit court was entirely within its authority and jurisdiction to protect Z.H. from imminent harm by ratifying the emergency, pre-petition removal, West Virginia Code § 48-20-204 did not confer home state jurisdiction upon the circuit court to continue presiding over the subsequent litigation.

This Court is left with the firm conclusion that Z.H. had no home state for purposes of the UCCJEA. We therefore turn our attention to the next possible basis for subject matter jurisdiction, "significant connection" jurisdiction.

**B. "Significant connection" jurisdiction:**

Pursuant to West Virginia Code § 48-20-201(a)(2),[16] "significant connection" jurisdiction may exist in West Virginia if no court in another state has home state jurisdiction under § 48-20-201(a)(1) or if a court in another state has home state jurisdiction but declines it; the child and parent or parents have a significant connection to West Virginia other than physical presence; and substantial evidence about the child's care, protection, training and relationships is available in West Virginia. Specifically, this portion of the statute provides that

> a court of this state has jurisdiction to make an initial child custody determination only if: . . . (2) A court of another state does not have jurisdiction under subdivision (1) of this subsection, *or* a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 20-207 or 20-208, *and*:
> (A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; *and*
> (B) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships[.]

*Id.* § 48-20-201(a)(2), in part (emphasis added). Because we have already concluded that no state has home state jurisdiction over Z.H., we consider the requirements of subparts (A) and (B) of this statute.

---

[16] *See supra* n. 11 (quoting W. Va. Code § 48-20-201).

With regard to subpart (B), from a review of the appendix record, it is clear that substantial evidence is available in *both* Virginia and West Virginia concerning Z.H.'s care and protection. The two allegations of abuse and neglect are prenatal drug abuse that harmed the child, and medical neglect by the attempted removal from the hospital. Evidence of the petitioner's prenatal drug use would be found in Virginia, where she resided and consumed the drugs. Another abuse and neglect case regarding the petitioner's drug abuse and parenting problems was heard in a Virginia court and was concluded just before the instant proceeding began. The petitioner's rights to another child were involuntarily terminated in the Virginia case because of her drug use and failure to improve. In addition, witnesses from the West Virginia hospital testified that Z.H. was born drug exposed and that the petitioner attempted to remove the child from medical care.

However, the statute uses the word "and"—thus evidence establishing both subpart (A) and subpart (B) is required for the circuit court to have significant connection jurisdiction over this case. "'And' is a conjunctive, and the use of 'and' here clearly makes both conditions necessary, not merely either of the two." *Ooten v. Faerber*, 181 W. Va. 592, 597, 383 S.E.2d 774, 779 (1989) (citation omitted).

There is no evidence in the appendix record indicating that Z.H. and at least one of his parents "have a significant connection with" West Virginia "other than mere physical presence[,]" as required by subpart (A). Rather, the petitioner testified during the adjudicatory hearing that she lives in Virginia, has never lived in West Virginia, and has

25

no connections with West Virginia other than going to the hospital. After giving birth, she returned to her home in Virginia. She testified about taking a bus from her home in Virginia to attend court hearings and MDT meetings for this case. In this appeal, she represents that she never intended to stay in West Virginia. A CPS worker confirmed that the petitioner lives in Virginia, and the CPS worker had no knowledge of any connection that petitioner has with West Virginia other than going to the hospital to deliver Z.H. There is limited evidence in the appendix record regarding Z.H.'s putative father L.H., but it is undisputed that he also resides in Virginia. At most, Z.H. and one or both parents were merely physically present in West Virginia for Z.H.'s birth. Therefore, we conclude that West Virginia does not have significant connection jurisdiction.

It is equally clear that the State of Virginia *does have* significant connection jurisdiction over this child custody matter.[17] As noted above, there would be substantial evidence of the petitioner's prenatal drug use available in Virginia. Moreover, the petitioner has significant connections to Virginia. She resides in Virginia and when she works, the work is performed from her Virginia home using the internet. Moreover, it was a Virginia court that presided over her other, recent, abuse and neglect case.

---

[17] Virginia has also adopted the UCCJEA, including the same statutory language as West Virginia for initial child custody jurisdiction. *See* Va. Stat. Ann. § 20-146.12 (2001).

Although Z.H. was only a newborn when this proceeding commenced, Z.H. also has a significant connection to Virginia through his parents. Virginia is where his parents reside and is where he was injured by the petitioner's prenatal drug use. If this abuse and neglect proceeding had not been initiated in West Virginia, Z.H.'s parents would have taken him home to Virginia. Critically, for purposes of significant connection jurisdiction, the statute does not limit courts to only examining evidence of events *after* the child's birth. The "lived from birth" language is found only in the statutory definition of "home state" with respect to children less than six months of age; it is not included in the statutory provision for significant connection jurisdiction. *Compare* W. Va. Code § 48-20-201(a)(2) (specifying elements of significant connection jurisdiction) with W. Va. Code § 48-20-102(g) (defining "home state"). The drafters of the model UCCJEA recognized that "[t]he jurisdictional determination [of significant connection jurisdiction] should be made by determining whether there is sufficient evidence in the State for the court to make an informed custody determination. That evidence might relate to the past as well as to the present or future." UNIF. CHILD CUSTODY JURISDICTION AND ENFORCEMENT ACT, Cmt. 2 to § 201 (Nat'l Conf. of Comm'rs of Unif. State Laws 1997) (internal quotation marks omitted).

In a leading case about the application of the UCCJEA to an abuse and neglect case involving a newborn baby, the Supreme Court of Illinois concluded that significant connection jurisdiction existed in the state where the mother and other relatives lived and where the mother received pre-natal and mental health care:

27

That takes us to section 201(a)(2), which clearly provides a basis for the trial court's exercise of jurisdiction in this case. Under this section, Illinois has jurisdiction if (1) no other state has "home state" jurisdiction; (2) D.S. and at least one of his parents has a significant connection with Illinois, other than mere physical presence; and (3) substantial evidence is available in Illinois concerning D.S.'s care, protection, training, and personal relationships. 750 ILCS 36/201(a) (West 2004). On the first point, we have already established that no other state has "home state" jurisdiction under section 201(a)(1). On the second point, the record shows that D.S.'s father and six of his half-siblings are Illinois residents, and that respondent was a longtime Illinois resident at least until the morning of D.S.'s birth. On the third point, there is no question that substantial evidence is available in Illinois concerning D.S.'s care, protection, training, and personal relationships. Again, both of D.S.'s parents and six of his eight half-siblings are longtime residents of Illinois. D.S.'s half-siblings are the subject of termination proceedings pending in the very same judicial circuit [in Illinois] that entered the decision below, and those proceedings have generated a substantial record relating to respondent's parental fitness and mental health. Respondent's mental health records are located in Illinois, and Illinois is where respondent received her prenatal care while pregnant with D.S. Indeed, the record strongly suggests that, with the possible exception of the records relating to D.S.'s actual delivery in Crawfordsville [Indiana], all of the evidence concerning D.S.'s care, protection, training, and personal relationships will be found in Illinois. Accordingly, we hold that the trial court possessed jurisdiction under section 201(a)(2).

*In re D.S.*, 840 N.E.2d at 1223-24. The Vermont Supreme Court took the same approach in its newborn case, *In re M.S.*, 176 A.3d 1124. After concluding that the newborn had no home state for UCCJEA purposes, the court found that Vermont had significant connection jurisdiction because of the parents' long history in Vermont; the mother had lived in Vermont at various times, including during her pregnancy; and the parents' other children were in the custody of the Vermont Department of Children and Families. *Id.* at 1134.

28

Using the same approach, it is clear that a Virginia court would have significant connection jurisdiction over Z.H.'s abuse and neglect case.

We turn our attention to the next potential basis for West Virginia to have jurisdiction under the UCCJEA: declination jurisdiction.

**C. "Declination" jurisdiction:**

Pursuant to West Virginia Code § 48-20-201(a)(3),[18] West Virginia would have jurisdiction if "[a]ll courts having jurisdiction under subdivision (1) or (2) of this subdivision have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under 20-207 or 20-208" of the Act. The subdivisions (1) and (2) referenced in this language are the home state and significant jurisdiction provisions of § 48-20-201. West Virginia Code § 48-20-207 permits a court to decline jurisdiction if it would be an inconvenient forum in which to hold the custody proceeding. West Virginia Code § 48-20-208 addresses when jurisdiction may be declined by reason of the unjustifiable conduct of party.

Critically, pursuant to the plain and unambiguous language of West Virginia Code § 48-20-201(a)(3), only a "court" may decline to exercise jurisdiction. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied

---

[18] *See supra* n. 11 (quoting W. Va. Code § 48-20-201).

without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970). Thus, the declination cannot come from a child protective services worker, attorney for the state, or any other person or official. We recently addressed this issue in *In re J.C.*, where we rejected an argument that a child protective services worker in a child's home state could decline jurisdiction. *See J.C.*, 242 W. Va. at 173, 832 S.E.2d at 99. We held that

> [o]ne of the requirements under West Virginia Code § 48-20-201(a)(2) (2001), for a circuit court to obtain subject matter jurisdiction of a child whose home state is not West Virginia, is that a "court" of the home state of the child must decline to exercise jurisdiction. This requirement is not satisfied by evidence that some other person or entity in the child's home state declined jurisdiction.

*Id.* at syl. pt. 4. Although this syllabus points refers to another state having "home state" jurisdiction, that is only because *In re J.C.* happened to involve facts where another state was the home state. Pursuant to the statutory language, this same principle of law applies when another state has either home state jurisdiction or significant connection jurisdiction. *See* W. Va. Code § 48-20-201(a)(3) ("All courts having jurisdiction under subdivision (1) or (2) of this subdivision have declined to exercise jurisdiction . . . "). Accordingly, we now hold that one of the requirements under West Virginia Code § 48-20-201(a)(3) (2001) for a court to obtain subject matter jurisdiction over an initial child custody determination where another state has either home state jurisdiction or significant connection jurisdiction, is that a court of the other state must decline to exercise jurisdiction. This requirement is not satisfied by evidence that some other person or entity in the other state has declined jurisdiction.

30

We have already concluded that Virginia has significant connection jurisdiction over this matter.[19] Because there is no evidence that a court in Virginia has declined to exercise that jurisdiction, or was even contacted to inquire about a declination, West Virginia does not have declination jurisdiction. We turn to the next potential basis for obtaining jurisdiction, default jurisdiction.

**D. "Default" jurisdiction:**

"Default jurisdiction" under West Virginia Code § 48-20-201(a)(4) applies if "[n]o court of any other state would have jurisdiction under the criteria specified in subdivisions (1), (2), or (3)" of § 48-20-201(a).[20] However, as set forth above, we have already concluded that the State of Virginia possesses significant connection jurisdiction over this matter pursuant to § 48-20-201(a)(2).[21] Therefore, West Virginia does not have default jurisdiction under the UCCJEA.

### IV. Conclusion

Based upon the foregoing discussion, we conclude that the circuit court did not have subject matter jurisdiction in this proceeding. "A decree entered in a pending suit

---

[19] *See supra* section III.B. of this opinion.

[20] *See supra* n. 11 (quoting W. Va. Code § 48-20-201).

[21] *See supra* section III.B. of this opinion.

in which the court lacks jurisdiction of the subject-matter is to that extent void[.]" Syl. Pt. 5, in part, *State ex rel. Hammond v. Worrell*, 144 W. Va. 83, 106 S.E.2d 521 (1958), *overruled on other grounds by Patterson v. Patterson*, 167 W. Va. 1, 277 S.E.2d 709 (1981); *see also*, *J.C.*, 242 W. Va. at 175, 832 S.E.2 at 101 (declaring abuse and neglect dispositional order void for circuit court's lack of subject matter jurisdiction under UCCJEA); *Universal Underwriters*, 239 W. Va. at 347, 801 S.E.2d at 225 (concluding that order deciding motion to dismiss was "void and unenforceable" because circuit court lacked subject matter jurisdiction); *TermNet Merch. Servs.*, 217 W. Va. at 700, 619 S.E.2d at 213 (recognizing that "any decree made by a court lacking jurisdiction is void"); *Jackson v. Pszczolkowski*, 2018 WL 5099642, at *2 (W. Va. Oct. 19, 2018) (memorandum decision) ("Without subject matter jurisdiction, any ruling issued by the circuit court would have been void."). Accordingly, the circuit court's March 5, 2020, order terminating the petitioner's rights to Z.H. is void and unenforceable.[22]

We vacate and remand this case to the circuit court with directions for the circuit court to immediately contact a court in the State of Virginia to inquire whether the Virginia court will decline its jurisdiction in this matter. Our decision does not mean that Z.H. should be returned to his parents in the interim. The record evidence is more than sufficient for this Court to conclude that it is in the child's best interests to remain safely with the foster parents while the jurisdictional issue is resolved. If the Virginia court

---

[22] This ruling necessarily extends to Z.H.'s father.

chooses to exercise jurisdiction, then Z.H. should be transferred to the custody of Virginia child welfare authorities. If the Virginia court declines jurisdiction, then West Virginia will have declination jurisdiction under the UCCJEA, West Virginia Code § 48-20-201(a)(3), and the circuit court must hold a de novo adjudicatory and dispositional hearing. *See J.C.*, 242 W. Va. at 176, 832 S.E.2d at 102.

The circuit court's March 5, 2020, dispositional order is vacated, and this case is remanded to the circuit court for further proceedings consistent with this opinion.[23]

Vacated and Remanded with Directions

---

[23] Because the circuit court's lack of subject matter jurisdiction is dispositive of this appeal, we do not address the petitioner's first assignment of error where she argues that the circuit court should have imposed a disposition other than the full termination of her rights.